TM:SEF
F.#2010R00578

M11-673

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

- against -

MICHAEL VIRTUOSO,

    also known as
    "Mike the Butcher,"

    Defendant.

- - - - - - - - - - - - - - - - -X

FILED UNDER SEAL

C O M P L A I N T

(18 U.S.C. §§ 894(a)
and 1952(a)(3)(A))

EASTERN DISTRICT OF NEW YORK, SS:

    SCOTT JOSEPH URBEN, being duly sworn, deposes and states that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), duly appointed according to law and acting as such.

    Upon information and belief, in or about and between March 2009 and December 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant MICHAEL VIRTUOSO, also known as "Mike the Butcher," together with others, did knowingly and intentionally participate in the use of extortionate means to collect and attempt to collect an extension of credit from Debtor #1.

    (Title 18, United States Code, Sections 894(a), 2 and 3551 et seq.)

Upon information and belief, on or about and between June 25, 2010 and July 28, 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant MICHAEL VIRTUOSO, also known as "Mike the Butcher," together with others, did knowingly and intentionally use one or more facilities in interstate commerce with intent to promote, manage, establish, carry on and facilitate the promotion, management, establishment and carrying on of an unlawful activity, to wit: larceny by extortion, in violation of New York Penal Law Section 155.35, and thereafter did perform and attempt to perform such promotion, management, establishment, carrying on and facilitation of the promotion, management, establishment and carrying on of such unlawful activity.

(Title 18, United States Code, Sections 1952(a)(3)(A), 2 and 3551 et seq.)

The source of your deponent's information and the grounds for his belief are as follows:[1]

1. I have been a Special Agent with the FBI for more than seven years. In the course of my experience with the FBI, I have been involved in numerous investigations of organized crime, including crimes involving murder, loansharking, narcotics, extortion and gambling. Those investigations have involved the

---

[1] Because the purpose of this Complaint is to state only probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

2

Bonanno organized crime family of La Cosa Nostra (the "Bonanno family") and other organized crime families.

2. This affidavit is based in part on my personal observations, interviews of witnesses - including cooperating witnesses and confidential informants, among others - conversations with other law enforcement agents, and my review of other evidence, including physical and electronic surveillance.

3. The defendant, MICHAEL VIRTUOSO, also known as "Mike the Butcher," is the owner of Graham Avenue Meats & Deli, a butcher shop located at 445 Graham Avenue, Brooklyn, New York 11211.

4. In November 2006, VIRTUOSO was arrested by agents of the FBI and charged with conspiracy to commit extortionate collection of credit, and detained. In August 2008, VIRTUOSO was convicted, pursuant to a plea of guilty, in the United States District Court for the Eastern District of New York of racketeering, including predicate acts of extortionate collection of credit and illegal gambling, in connection with his membership in and association with the Bonanno family. VIRTUOSO was sentenced to 32 months' imprisonment. He was released from federal custody on March 5, 2009, and is subject to a term of supervised release that is scheduled to terminate on March 4, 2012.

5. As further detailed below, during the course of an investigation relating to members and associates of the Bonanno family, I learned, through a range of sources of information, that since the time of his release from prison in March 2009, VIRTUOSO has used extortionate means to collect and attempt to collect debts that the defendant contends are owed to him and to others, including loans that VIRTUOSO made prior to his incarceration.

6. Over the course of several interviews, an individual, Debtor #1, has provided the following information, in substance and in part, to the FBI:[2]

- Debtor #1 was referred to the defendant to obtain a loan approximately one year before VIRTUOSO was arrested on the charges set forth in paragraph 4 above. Debtor #1 understood VIRTUOSO to be involved in organized crime. VIRTUOSO loaned Debtor #1 approximately $1,000.

- Debtor #1 did not believe that the loan was enforceable by civil judicial process.

---

[2] Debtor #1 does not have a criminal record. However, after being issued a federal grand jury subpoena, Debtor #1 told a confidential source of the FBI ("CS") that he intended to meet with VIRTUOSO's attorney before testifying so that the attorney could prepare him for his testimony. Debtor #1 also told the CS that he had told federal agents that the money he borrowed from VIRTUOSO was a personal loan, with no interest. In fact, the CS had previously learned from a Bonanno soldier acquainted with both Debtor #1 and VIRTUOSO that Debtor #1 paid VIRTUOSO a usurious interest rate on the loan, which the CS understood to be five percentage points per week on a principal amount of $1,500. Debtor #1 ultimately told the interviewing agents that he did not know how much he had repaid VIRTUOSO and that he did not know whether he paid interest or not.

4

- Debtor #1 made regular cash payments to VIRTUOSO in the amount of $50 or $100, either once or twice per month. Debtor #1 would make the payments to the defendant in the rear office area of VIRTUOSO's butcher shop. On one occasion, at the defendant's direction, Debtor #1 made the payment to VIRTUOSO inside a walk-in freezer located in the rear of the butcher shop.

- Debtor #1 ceased making regular payments to VIRTUOSO at the time of VIRTUOSO's arrest and incarceration.

- Following VIRTUOSO's release from prison, VIRTUOSO contacted Debtor #1 and stated that Debtor #1 continued to owe VIRTUOSO money on the loan. Thereafter, Debtor #1 resumed making regular cash payments to VIRTUOSO in the amount of $50 or $100, once or twice per month.

- Debtor #1 continued to make regular payments to VIRTUOSO through December 2010. Debtor #1 stopped making payments to VIRTUOSO after agents of the FBI approached Debtor #1 and inquired about the debt and about his relationship with VIRTUOSO.

7. Based on my experience in conducting organized crime and loansharking investigations, I am aware that, on a $1,000 loan, a biweekly payment of $100 corresponds to an extortionate interest rate of five percentage points, or more than 250 percent per year.

8. An individual who knows both Debtor #1 and VIRTUOSO has provided the following information, in sum and substance, to the FBI:

- For a period of approximately one year before VIRTUOSO was arrested and incarcerated,

5

        Debtor #1 met privately with VIRTUOSO in the rear office area of the butcher shop approximately every two weeks.

- Following VIRTUOSO's release from prison, VIRTUOSO stated, in sum and substance, that "a lot of people owe him money and he feels that he is entitled to it." The individual understood VIRTUOSO to mean that he intended to collect on loans that he had made prior to his arrest for loansharking.

9. On or about June 25, 2010, law enforcement agents acting pursuant to a court-authorized wiretap of a telephone subscribed to by Graham Avenue Meat & Deli and used by the defendant VIRTUOSO, intercepted a telephone call in which VIRTUOSO spoke to an individual, Debtor #2, and requested repayment of money VIRTUOSO stated was owed to him. During the call, VIRTUOSO told Debtor #2: "Alright don't forget this week is going to be 3 bills. So we backing up again. See if we can catch up with them. Alright?" VIRTUOSO went on to clarify that he was referring to "2 bills and plus this bill of Friday."

10. Thereafter, VIRTUOSO made additional phone calls to Debtor #2's workplace concerning money he contended Debtor #2 owed. For example, during a call that VIRTUOSO placed to Debtor #2 on or about July 7, 2010, Debtor #2 told VIRTUOSO: "Let me come down there, to, let me see what I end up with today. I wanna give you something. Also I want to compare my paper with you. I think you're missing a hundred dollar payment on your

paper when I saw it last time." VIRTUOSO responded: "We have to check that out goomba."

11. On or about July 25, 2010, VIRTUOSO called Debtor #2 again. During that conversation, Debtor #2 told VIRTUOSO: "I'll try and see you later, I'm fucked here. . . . So let me see what I can do today, OK?"

12. On or about July 28, 2010, VIRTUOSO called Debtor #2's workplace and left the following message: "Tell him he's got to call me or I come over there."

13. During the course of their electronic surveillance, the agents intercepted numerous other telephone calls in which the defendant requested repayment of money or made arrangements to collect money he contended was owed to him by various individuals. For example:

- During a conversation between the defendant and an individual, Debtor #3, on or about June 23, 2010, VIRTUOSO stated that Debtor #3 owed him $450 and asked: "How you gonna take care of this mess?" VIRTUOSO also stated: "I don't want to, you know, you got yourself in trouble here then what, what, then what are we gonna do? What are we playing games?" VIRTUOSO told Debtor #3 to "stop playing games. Get yourself together."

- During a conversation between the defendant and another individual, Debtor #4, on or about July 5, 2010, Debtor #4 stated that he would "be there this weekend" but was "just waiting for some big, ah, checks to come in." Debtor #4 went on to state that "remember, 'member a couple of weeks I was, fucked me all up." VIRTUOSO responded: "I'll see you this week."

7

14. The FBI has interviewed the individuals described in paragraphs 9 through 13 above, as well as other individuals who have borrowed money from the defendant. Those individuals have advised the FBI, variously, and in substance and in part, that (1) VIRTUOSO is a loanshark and is associated with organized crime; (2) they owed money to VIRTUOSO or to other individuals on whose behalf VIRTUOSO collected money from them, or were being held responsible by VIRTUOSO for debts incurred by others; (3) they did not believe those debts to be enforceable by civil judicial process; and (4) VIRTUOSO contacted them following his release from prison in March 2009 and requested repayment of debts he contended were outstanding, including in some cases money he had loaned out prior to his incarceration.[3]

## SEALING

15. I request that this affidavit and an arrest warrant issued in connection therewith be sealed until further order of the Court. Public disclosure of this affidavit prior to VIRTUOSO's arrest would jeopardize this investigation.

---

[3] Debtor #4 has a criminal record that includes convictions for offenses related to fraud and theft.

WHEREFORE, your deponent respectfully requests that a sealed arrest warrant be issued for the defendant MICHAEL VIRTUOSO, also known as "Mike the Butcher," so that he may be dealt with according to law.

                                                          _____
                                                          SCOTT JOSEPH URBEN
                                                          Special Agent
                                                          Federal Bureau of Investigation

Sworn to before me this
30 Day of June, 2011

_____  S/ Reyes  JR.
THE HONORA
UNITED STA
EASTERN DI