UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
UNITED STATES OF AMERICA                       11 Cr. 508 (SLT)

- against -

MICHAEL VIRTUOSO.,
                     Defendant.
-----------------------------------------------------------x

## MICHAEL VIRTUOSO'S REPLY MOTION AND SUPPORTING MEMORANDUM FOR RELEASE ON BAIL PENDING TRIAL

JOSEPH DIBENEDETTO
The Law Office of
Joseph DiBenedetto, P.C.
The Woolworth Building
233 Broadway, Suite 2707
New York, NY 10279
212-608-5858
jdibenedetto@dibenedettolaw.com

*Attorney for Michael Virtuoso*

**ARGUMENT**

The government's memorandum of law in opposition to Virtuoso's application for release on bond does nothing more than recycle the woefully weak arguments contained within their original detention memorandum filed on July 5, 2011 and ignores the gaping holes identified by defense counsel. Additionally, the government's attempt to disguise their lack of proof by focusing on Virtuoso's prior conviction is equally transparent and does not support Virtuoso's continued detention. Moreover, the government's interpretation regarding the defense's proffer and concessions is frivolous. Finally, the alleged debtors and/or John Does have all provided defense counsel with information that exonerates Virtuoso from any wrongdoing. For all these reasons, which will be more specifically addressed herein, Virtuoso's release on bond is appropriate given the lack of "quantity and quality" of the government's proffer.[1]

**First,** the government has done nothing to controvert Virtuoso's devastating proffer regarding the charged offenses

---

[1] Virtuoso has not improperly attempted to shift the burden of proof on the government regarding the legal standards surrounding the instant proceeding. In fact, defense counsel's submission is in direct response to the government's original detention memorandum filed on July 5, 2011, which addressed the substantive offense only, not the violations of supervised release. The government now has attempted to combine both a bail application on the instant indictment with the violation of supervised release, which is improper. Nevertheless, Virtuoso's proffer more than eclipses the necessary showing under both the Bail Reform Act and the governing law surrounding a violation of supervised release.

other then repeatedly use the word "irrelevant" and grossly misconstrue the proffered evidence. To briefly recap, Virtuoso has advanced sufficient facts surrounding Debtor's #1-4 and/or John Doe #1 and #2. to not only satisfy his release on bond, but also to support a straight acquittal of all charges.[2] More specifically, Virtuoso's detailed proffer, which includes **statements by the alleged victims themselves**, establishes the following regarding each of the following debtors:

(1) Debtor #2 (Steve Maglia) owed a lawful debt to Palermo Bakery for bread supplied to his luncheonette by Palermo bakery; Palermo bakery was in default on a lawful and binding promissory note payable to Virtuoso (previous owner) which allowed Virtuoso the ability to lawfully retake the bakery; rather than retake the bakery, Virtuoso assisted Palermo Bakery and managed Maglia's account because of the close proximity to Virtuoso's butcher shop; Maglia acknowledged to both the government and the defense that he owed a lawful debt to Palermo Bakery and

---

[2] Virtuoso's bail application should not be removed from ECF for multiple reasons. First and foremost, the government "gratuitously" provided defense counsel with the names of the alleged debtors. As part of discovery, the government turned over to Virtuoso the applications and affidavits in support of the court authorized wiretaps. Within the applications and affidavits, the government identified by name the alleged debtors. The government in no way attempted to redact the names contained within these documents. Based on this fact alone, defense counsel should not be required to redact or remove Virtuoso's bail application from ECF. For the government to now spin its failure to redact all documents into an attempt by the defense to intimidate these alleged persons is patently false and improper. Stated differently, if the government truly believed that these alleged persons were at risk, they would be obligated to redact any identifying information in any document. More importantly, each and every alleged debtor and/or John Doe has spoken to Virtuoso's investigator and informed the defense that they are not victims and do not fear Virtuoso in any way.

2

Virtuoso handled the account; Maglia further acknowledged that he never received a threat - express or implied - from Virtuoso. The aforementioned conduct amounts to nothing more than legitimate business.

(2) Debtor #3 (Rosemary Jacobs) has been a patron of Virtuoso's butcher shop for many years; Jacobs is allowed to shop on credit at Virtuoso's shop given her limited and fixed income; sometimes Virtuoso provides her with cash so that she can purchase her medications because she is short money; Jacobs repays Virtuoso at the start of each month and carries a bill forward; Jacobs informed the government of this arrangement and of the lawful debt; Jacobs also informed the government that she never received a threat - express or implied - from Virtuoso. To somehow twist Virtuoso's gracious conduct into a criminal act, in spite of Rosemary Jacobs statements to the government verifying the arrangement, defies logic.

(3) John Doe #1, **according to the complaint and government's memorandum**, does not allege that Virtuoso extended him an extortionate extension of credit or that he ever received a threat - express or implied - from Virtuoso.

The government's only counter to the aforementioned proffer, which is supported by the <u>**alleged victims' own statements**</u>, is to distort Virtuoso's arguments and falsely allege that Virtuoso has made concessions of fact. For example,

3

the government alleges that Virtuoso conceded making a loan to John Doe #1 and cites to Virtuoso's brief at page twenty to support that claim. A plain reading of the relevant portion of Virtuoso's memorandum clearly shows that no such concession was made. In fact, it highlighted the government's inconsistent position regarding alleged threats. More specifically, defense counsel pointed out that while the government alleged that John Doe #1 has made a payment to Virtuoso in his walk-in freezer, they still could not and did not expressly claim in their memorandum that John Doe #1 was threatened by Virtuoso in any way. Virtuoso did not concede that he collected payment from John Doe #1.

Moreover, the government attempts to skirt the true issues surrounding these proceedings - whether or not there is evidence to support a finding that Virtuoso poses a danger to the community and is considered a risk of flight - by claiming that they can prove Virtuoso's guilt based on an implied threat established by his reputation. See Gov't Opposition pg. 31-32. It is aptly noted that this argument clearly establishes just how weak the government's case actually is and mandates Virtuoso's release on bond. Stated differently, the government's argument that they can attempt to prove Virtuoso's guilt based on an implied threat, **in spite of the overwhelming evidence to suggest otherwise (which includes statements by the alleged**

4

*victims that they were not threatened explicitly or implicitly by Virtuoso)* is frivolous.

**Second,** the government's request for detention based on allegations of organized crime and his prior case before this Court are insufficient grounds to deny bail.[3] See United States v. Persico, 376 Fed. App'x 155, 157 (2d Cir. 2010) (holding that allegations of organized crime do not trigger a presumption against bail); see also United States v. Ciccone, 312 F.3d 535, 542-43 (2d Cir. 2002) (holding that there is no *per se* rule against bail even for defendants alleged to be organized crime leaders). Instead, to deny bail, a Court is required to make an individualized determination that no combination of conditions can reasonably assure the safety of the community or the defendant's appearance in court. Indeed, the Second Circuit has stated unambiguously "that there is no *per se* rule requiring the detention of organized crime leaders; **rather an individualized determination of the quality and quantity of the evidence of danger is appropriate.**" United States v. Cirillo, 149 Fed. App'x 40, 43 (2d Cir. 2005) (emphasis supplied). In Cirillo, the Second Circuit held additionally that a district court has "**the responsibility to carefully evaluate the reliability of**

---

[3] The government's recitation of the procedural history surrounding Virtuoso' previous case is inaccurate. The government cites to a conversation by one of Virtuoso's co-defendants in favor of detention. It is aptly noted that the government ultimately dismissed that count against Virtuoso given the lack of evidence. Moreover, contrary to the government's assertion, Virtuoso has never acknowledged his membership in any organized crime family.

5

**proffered evidence.**" Cirillo, 149 Fed. App'x at 43 (emphasis supplied); see also Ciccone, 312 F.3d at 542-43 (upholding denial of bail where court "**carefully reviewed and detailed both the quality and quantity of the evidence proffered by the Government and [defendant's] attempt at rebutting it**" (emphasis supplied)).

Upon a careful review of the evidence, it is apparent that the government's proffer consists of nothing more than gross misrepresentations combined with Virtuoso's prior conviction. Conversely, Virtuoso has undoubtedly established that he is a proper candidate for bail based on a showing that included: (1) his impeccable work history and lifelong community ties; (2) the weakness of the government's proffer regarding Virtuoso's involvement in any of the charged conduct; (3) the government's inaction surrounding the charged offense for at least one year; (4) the government's willingness to allow Virtuoso to remain at liberty for approximately one year prior to the instant arrest in spite of being in possession of the same evidence; (5) the government's willingness to allow Virtuoso to walk the streets after his arrest if he opted to cooperate with their office; and (6) the considerable moral suasion present in the proposed bail package.

**Third**, the allegations advanced by the government regarding an alleged loan to John Doe #2 are based solely on the word of

6

John Doe #2, a serial liar and deadbeat dad who, according to Judge Irizarry, **"*lies about the little things and lies about the big things.*"** In fact, John Doe #2 has earned the distinction of being placed in "The Hall of Shame" by Arnold Diaz from Channel 2 News based on his checkered past.

The government's acknowledgement of John Doe #2's "multiple criminal convictions...including fraud" barely scratches the surface in describing the tangled web of lies and deceit that he has weaved. John Doe #2 has a prior federal conviction for fraud as well as numerous state convictions. More importantly, he recently violated the terms of his supervised release and was facing new state charges when he opted to cooperate with the government. John Doe #2's violations of supervised release include:

(1) lying about his place of residence;
(2) failure to pay child support;
(3) new charges for grand larceny;
(4) wrongfully taking money in excess of one thousand dollars from multiple victims based on false promises;
(5) insurance fraud;
(6) driving while intoxicated during his term of supervision; and
(7) fleeing a police officer while driving under the influence of alcohol

7

Further, John Doe #2 continued to lie to the government and commit crimes even while attempting to negotiate a disposition of his violation of supervised release.[4] More specifically, he continued to commit fraud and subsequently was arrested for **driving while intoxicated and fleeing a police officer while his violation proceedings were still pending.** In fact, AUSA Tucker stated the following during his sentencing on the violation of supervised release:

> As your honor knows very well since the case has been pending before her for almost a year now, the defendant has engaged in a series of escalating violative acts. Initially these violations were very serious; **they were lying to his probation officer.**
>
> **Efforts by the court, by probation and the government to resolve this case ultimately didn't work out because while discussions were ongoing, the defendant continued to violate the terms of his probation, first by engaging in certainly suspicious activity involving his workplace** - obviously those aren't the subject of his guilty plea today, but that is something that can be taken into account - and then while those charges were under investigation, he endangered himself and others by driving a car under the influence of alcohol.
>
> As your Honor said when he appeared on March 11, the escalating conduct in the interests of deterring additional violations and, frankly, to protect the public, the

---

[4] The government has alleged that John Doe #2 requested that his family be relocated. It is respectfully asserted that given John Doe #2's track record, it is more likely that he is asking for his family to be relocated because he is a deadbeat dad who likely could not and did not want to make rent payments rather than for safety concerns.

8

> Probation department and the government's view is that the appropriate sentence in this matter is 12 months...

See Transcript of Sentencing, pgs. 16-17 attached hereto as "Exhibit A."

Additionally, Judge Irizarry's remarks at sentencing adequately describe his inability to be truthful and scheming nature. She stated:

> ...the court in the first place, gave you a chance by allowing you to stay at liberty when the initial charges were filed.
>
> Not only did you violate the trust that the court placed on you when it placed you on supervised release, that you would comply not only with the special conditions imposed by the court but also with the conditions that were imposed by probation, that you would abide by them by, in the first instance, committing the first of four violations that were filed, not only charge one, which you plead guilty to today, but **also there were additional failures to provide truthful statements, failure to pay your fine, failure to pay child support,** and these were addressed in ongoing conferences with the court, where it certainly appeared - and the court made the record at that time during those conferences - that you would just do what you barely had to do by paying a piece of the fine right before the conference, or right before you had to see probation, paying your child support arrears just before you had to come to court.
>
> I have to say that over the course of time that this matter had been pending, while there appears to be evidence that you have epileptic seizures - you're on medication - it has been confirmed by a specialist, but the resolution of those health issues, it seems to me, have been unnecessarily

9

> prolonged as part of malingering and avoiding disposition of these initial charges...but there were additional charges that were filed thereafter as well, additional violations of the court's trust...
>
> ***There was, in addition, under charge five, which you did not plead guilty to, allegations of charges that were brought against you for grand larceny, wrongfully taking money in excess of over a thousand dollars from the victims by false promise; insurance fraud, charge six and then we get to – which are Grade C violations – and then we get to the charge seven, the charge to which you plead guilty to, which is of grave concern to the court because it is apparent to the court that you are a danger to the public and protecting the public is one of the goals of sentencing...***
>
> ***The crime that originally brought you to this court was a crime that was based on fraud, bank fraud. You have continued to demonstrate that can't tell the truth, you lie about the little things and you lie about the big things, and based on the danger to the public, as expressed by the government and also probation.***
>
> I note that even while you were, as probation indicates in the violation report, that even though you have a criminal history category of two, ***it under represents your criminal history because while you were awaiting sentence in this case, in the first instance, you had a pending Kings County Supreme Court case covering five separate arrests. Two of those arrests were incurred when you were under pretrial supervision here. You have no regard whatsoever for rules under supervision.***

See id. pgs. 28-32.

Finally, as John Doe #2 was exiting the federal courthouse after an appearance before Judge Irizarry on his violation of supervised release, he was confronted by Arnold Diaz of Channel 2 News and exposed for his continued fraud of numerous helpless victims. This conduct was referred to the Kings County District Attorney's Office.

This was not John Doe #2's first appearance on "Shame On You." The segment aired on Channel 2 clearly depicts John Doe #2 for what he truly is – a pathological liar. More specifically, while on camera John Doe #2 was read a list of names and asked if he ever spoke to those persons or provided repair work to their automobiles. He responded no. But unbeknownst to John Doe #2, he was videotaped by the victim, which captured his web of lies and poor excuses. A copy of the segment is attached hereto as "Exhibit B." If the attached CD does not play, the segment can be viewed on the internet at ███████████████████████████████
███████

Simply put, John Doe #2 is a proven habitual liar and lacks credibility.

**CONCLUSION.**

For the aforementioned reasons and the reasons contained in our previous memorandum, it is respectfully requested that this Court release Virtuoso on bond.

Respectfully submitted,

_____/S/_____
JOSEPH DIBENEDETTO
The Woolworth Building
233 Broadway, Suite 2707
New York, NY 10279
212-608-5858
jdibenedetto@dibenedettolaw.com

*Attorney for Michael Virtuoso*